Carl L. HICKERSON and Joe B. Jackson, doing business under the name and style of Home Roofing and Building Company, a general partnership, Plaintiffs,

v.

LOGAN–LONG COMPANY, a corporation, Defendant.

Civ. A. No. 4427.

United States District Court
S. D. Ohio, W. D.
April 8, 1960.

Johnson, Levy & Koodish, Cincinnati, Ohio, Stegall & La Roche, Murfreesboro, Tenn., Charles Weiner and George W. Weber, Jr., Cincinnati, Ohio, for plaintiffs.

Maurice E. Burr of Burr & Golden, Chicago, Ill., Allen Brown, Cincinnati, Ohio, for defendants.

DRUFFEL, District Judge.

The Court finds the facts as follows:

1. Plaintiffs received an invitation to bid on a government project, the specifications for which included a roofing of .005 aluminum laminated to felt.

2. Plaintiffs had no prior experience with aluminum.

3. Plaintiffs, therefore, called Alcoa in Atlanta to inquire about a source for such roofing material to determine whether to make a bid and to ascertain the price of such roofing upon which to base a bid.

4. The Atlanta Alcoa office transmitted to Dr. Hill, its Pittsburgh representative, complete information as to exactly what was requested by plaintiffs, including the total number of square feet needed and the purpose of the use of the material, that it was for a government job—the specifications for which were probably written by the Army Corps of Engineers, that .005 aluminum sheet was to be bonded to 15 lb. felt with 40 lb. asphalt heated at 400° F.

5. Dr. Hill in turn called plaintiffs; thereafter he called defendant which, in turn, called plaintiffs.

6. Defendant, on the basis of the evidence, must have received from Dr. Hill full information as to the purpose of use of the material and exactly what was wanted before making its quotation to plaintiffs.

7. Defendant quoted a price to plaintiffs of $6.41 for .005 aluminum laminated as specified; at plaintiffs' request this was confirmed by defendant in writing.

8. Although defendant had the correct information in its possession it, by reason of its own fault, computed its price based upon .0005 aluminum cap sheet; however, plaintiffs were at all time unaware of any such mistake and defendant, in confirming the price in writing, definitely reiterated that such price was for .005 aluminum.

9. Summarizing, defendant, from the beginning had been given and had in its possession the correct information that .005 aluminum was desired; every oral and written expression of intent both by plaintiffs and defendant clearly sets forth this fact; orally and in writing defendant quoted on .005 aluminum; the mistake was solely that of defendant due to its own fault in misreading decimals of which mistake plaintiffs were, at all times, unaware and free of fault.

10. In reliance upon and directly as a result of defendant's offer to supply the required material at the price quoted plaintiffs, on June 20, 1958, bid on the government project, the bid being based upon defendant's quoted price for the material.

11. Defendant's agents knew or should have known that plaintiffs were requesting a price quotation for the purposes of bidding on a job; they should have foreseen that such bid and the amount thereof would be dependent upon and induced by defendant's price quotation.

12. Plaintiffs, being the low bidder, were awarded the contract. On the day the bid was made, the plaintiffs were informed of this fact; subsequently, a written contract was entered into between plaintiffs and the government which included the posting of a performance bond by plaintiffs.

13. On June 21, the day following the bid by plaintiffs, after the engineers had orally told plaintiffs that they would be awarded the contract but before the written contract was executed and before posting of a performance bond by plaintiffs, plaintiffs conferred with the Cincinnati representative of defendant; at that time, defendant's agent read the specifications.

14. At this conference, all questions as to the material to be manufactured and supplied by defendant were agreed upon; plaintiffs ordered said roofing materials from defendant for which plaintiffs were to send a check for ⅓ of the total price upon requesting shipment. Complete information regarding the conference was transmitted by defendant's agent to Chicago by a written memorandum dated June 23rd.

15. On July 7 plaintiffs mailed defendant a letter requesting shipment from defendant and enclosing a check for ⅓ the total price.

16. On July 9th, after receipt of plaintiffs' letter, defendant, for the first time notified plaintiffs that it would not supply the roofing material.

17. The sole reason for defendant's refusal to perform was its own negligent mistake in computing the price on .0005 aluminum instead of on .005 aluminum; the other reasons assigned by defendant are immaterial, have no basis in fact, or are without justification.

18. Plaintiffs were required to complete their contract with the government; due to defendant's refusal to comply with its offer, plaintiffs had to try to find another source; after a great deal of difficulty, plaintiffs were able to complete the contract with the government but only after experiencing a great deal of inconvenience and difficulty and only at a much higher cost.

19. As a result of plaintiffs' reliance upon defendant's quotation of a price and refusal of defendant to perform in accordance with its quotation and offer, plaintiffs have been damaged in the sum of $19,661.44.

## Law

The Court coming on to make its conclusions of law, finds:

1. Plaintiffs claim a right to recover their damages from defendant both on contract and estoppel, either of which claim, if found in favor of the plaintiffs, is sufficient to entitle plaintiffs to judgment.

2. The Court holds that, while in its opinion plaintiffs would not be entitled to judgment on the basis of a contract between the parties, plaintiffs have sustained their burden of proof so as to be entitled to recover from the defendants on the grounds of estoppel.

3. All the elements of estoppel are present:

(a) Plaintiffs were without fault.

(b) The plaintiffs relied upon and had a right to rely upon the defendant's price quotation given orally and confirmed in writing.

(c) Defendant's agents, as reasonable persons, should have foreseen such reliance on its quotation.

(d) They should have foreseen that action such as that taken by defendant, namely, bidding on a job in reliance thereon, would have been induced by defendant's quotation.

(e) Plaintiffs substantially changed their position as a result of defendant's actions; they bid upon a government job and were awarded the contract whereby they were legally bound to perform for the bid price; they posted a performance bond on which they and their surety would have been liable had plaintiffs failed to complete the job for the bid price * * *

(f) The mistake was entirely a unilateral one resulting solely from the negligence of the defendant's agents so that defendant has no legal or equitable right to rely on such mistake.

4. Under such circumstances, defendant has been estopped from claiming anything or taking any action inconsistent with its offer, made orally and confirmed in writing; therefore, defendant was compelled to perform in accordance with its oral communication of June 19 and its letter of June 20.

5. Having failed to do so, the defendant, being the party solely at fault, must bear the loss.

Wherefore, the court finds that plaintiffs are entitled to judgment against the defendant in the sum of $19,661.44 together with costs.

To all of which defendant excepts.